## LOPEZ *v.* DAVIS, WARDEN, ET AL.

No. 99–7504.   Argued October 30, 2000—Decided January 10, 2001

232

GINSBURG, J., delivered the opinion of the Court, in which O'CONNOR, SCALIA, SOUTER, THOMAS, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, in which REHNQUIST, C. J., and KENNEDY, J., joined, *post*, p. 245.

*Mark V. Meierhenry* argued the cause and filed briefs for petitioner.

*Beth S. Brinkmann* argued the cause for respondents. With her on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson,* and *Deputy Solicitor General Dreeben.*\*

JUSTICE GINSBURG delivered the opinion of the Court.

Congress has provided, in 18 U. S. C. § 3621(e)(2)(B), that the Bureau of Prisons (Bureau or BOP) may reduce by up to one year the prison term of an inmate convicted of a non-violent felony, if the prisoner successfully completes a substance abuse program. The Bureau's implementing regula-

---

\*Stephen R. Sady* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

tion categorically denies early release to prisoners whose current offense is a felony attended by "the carrying, possession, or use of a firearm." 28 CFR § 550.58(a)(1)(vi)(B) (2000). The validity of the Bureau's regulation is the question presented in this case. We hold, in accord with the Court of Appeals for the Eighth Circuit, that the regulation is a permissible exercise of the Bureau's discretion under 18 U. S. C. § 3621(e)(2)(B).

## I

### A

Title 18 U. S. C. § 3621 governs the imprisonment of persons convicted of federal crimes. In 1990, Congress amended the statute to provide that "[t]he Bureau shall . . . make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Pub. L. 101–647, § 2903, 104 Stat. 4913. Four years later, Congress again amended § 3621, this time to provide incentives for prisoner participation in BOP drug treatment programs. The incentive provision at issue reads: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Pub. L. 103–322, § 32001, 108 Stat. 1897 (codified at 18 U. S. C. § 3621(e)(2)(B)).

In 1995, the Bureau published a rule to implement the early release incentive. 60 Fed. Reg. 27692–27695; 28 CFR § 550.58. Because the statute explicitly confined the incentive to prisoners convicted of "nonviolent offense[s]," 18 U. S. C. § 3621(e)(2)(B), the BOP ranked ineligible for early release all inmates currently incarcerated for "crime[s] of violence," 60 Fed. Reg. 27692. As explained in the Bureau's program statement, the BOP defined "crimes of violence" to include a drug trafficking conviction under 21 U. S. C. § 841,

if the offender received a two-level sentence enhancement under United States Sentencing Commission, Guidelines Manual (USSG) §2D1.1(b)(1) (Nov. 2000), for possessing a dangerous weapon during commission of the drug offense. Bureau of Prisons Program Statement No. 5162.02, §9 (July 24, 1995), reprinted in App. to Brief for Petitioner 17–18.[1] "[E]xercising [its] discretion in reducing a sentence," the Bureau also excluded from early release eligibility inmates who had a prior conviction "for homicide, forcible rape, robbery, or aggravated assault." 60 Fed. Reg. 27692 (codified at 28 CFR §550.58 (1995)).

The Courts of Appeals divided over the validity of the Bureau's definition of crimes of violence to include drug offenses that involved possession of a firearm. A majority of Circuits, including the Eighth, held that §3621(e)(2)(B) required the Bureau to look only to the offense of conviction (drug trafficking), and not to sentencing factors (firearm possession), in determining whether an offender was convicted of a "nonviolent offense," and was therefore eligible under the statute for the early release incentive. *Martin* v. *Gerlinski*, 133 F. 3d 1076, 1079 (CA8 1998); see also *Fristoe* v. *Thompson*, 144 F. 3d 627, 631 (CA10 1998); *Byrd* v. *Hasty*, 142 F. 3d 1395, 1398 (CA11 1998); *Roussos* v. *Menifee*, 122 F. 3d 159, 164 (CA3 1997); *Downey* v. *Crabtree*, 100 F. 3d 662, 668 (CA9 1996). The Fourth and Fifth Circuits, however, upheld the Bureau's classification of drug offenses attended by firearm possession as violent crimes. *Pelissero* v. *Thompson*, 170

---

[1] Title 21 U. S. C. §§841(a)(1) and (2) make it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," or "to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level sentence enhancement if a dangerous weapon was possessed in connection with the commission of a drug offense. See USSG §2D1.1(b)(1) and comment., n. 3 (Nov. 2000).

F. 3d 442, 447 (CA4 1999); *Venegas* v. *Henman*, 126 F. 3d 760, 763 (CA5 1997).

This split among the Circuits prompted the Bureau in 1997 to publish the regulation now before the Court. See 62 Fed. Reg. 53690–53691. Like the 1995 rule, the current regulation excludes from early release eligibility offenders who possessed a firearm in connection with their offenses. In contrast to the earlier rule, however, the 1997 regulation does not order this exclusion by defining the statutory term "prisoner convicted of a nonviolent offense" or the cognate term "crimes of violence." Instead, the current regulation relies upon "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates." *Id.*, at 53690. The regulation, designed to achieve consistent administration of the incentive, now provides:

> "(a) *Additional early release criteria.* (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> ·     ·     ·     ·     ·
>
> "(iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses;
>
> ·     ·     ·     ·     ·
>
> "(vi) Inmates whose current offense is a felony:
>
> ·     ·     ·     ·     ·
>
> "(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon . . . ." 28 CFR § 550.58(a) (2000).

In sum, the 1995 rule defined the statutory term "prisoner convicted of a nonviolent offense" to exclude categorically an inmate who possessed a firearm in connection with his offense. The current regulation categorically excludes such an inmate, not because § 3621(e)(2)(B) so mandates, but pur-

suant to the Bureau's asserted discretion to prescribe additional early release criteria. Drug traffickers who possess firearms when they engage in crimes are no longer characterized as "violent" offenders within the meaning of the statute. But they are bracketed, for sentence reduction purposes, with persons currently incarcerated for "nonviolent offense[s]" who in the past committed crimes qualifying as violent. The preconviction conduct of both armed offenders and certain redicivists, in the Bureau's view, "suggest[s] that they pose a particular risk to the public." Brief for Respondents 30.

B

In 1997, petitioner Christopher A. Lopez was convicted of possession with intent to distribute methamphetamine, in violation of 21 U. S. C. § 841. Upon finding that Lopez possessed a firearm in connection with his offense, the District Court enhanced his sentence by two levels pursuant to USSG § 2D1.1(b)(1). Lopez is currently scheduled to be released from prison in June 2002.

While incarcerated, Lopez requested substance abuse treatment. The Bureau found him qualified for its residential drug abuse program,[2] but categorically ineligible, under 28 CFR § 550.58(a)(1)(vi), for early release. App. 3–7.

When notified that he would not be a candidate for early release, Lopez challenged the BOP's determination by filing a petition for a writ of habeas corpus, under 28 U. S. C. § 2241, in the United States District Court for the District of South Dakota. The District Court granted the petition. In that court's view, the Bureau's 1997 regulation did not correct the infirmity the Eighth Circuit saw in the 1995 rule. See App. 17–18, and n. 4 (citing Martin, 133 F. 3d, at 1079). "[I]t is true," the District Court recognized, "that the BOP

---

[2] To qualify for residential substance abuse treatment, an inmate must be "determined by the Bureau of Prisons to have a substance abuse problem" and be "willing to participate in [the] program." 18 U. S. C. §§ 3621(e)(5)(B)(i), (ii).

may exercise a great deal of discretion in determining who among the eligible nonviolent offenders may be released." App. 17. But, the District Court held, the BOP may not categorically count out, "based upon sentencing factors or weapon possession," inmates whose underlying conviction was for a nonviolent crime. *Id.*, at 18. Accordingly, the District Court ordered the BOP "to reconsider Lopez's eligibility for early release." *Id.*, at 19.

The Eighth Circuit reversed. *Bellis* v. *Davis*, 186 F. 3d 1092 (1999). Section 3621(e)(2)(B), the Court of Appeals observed, "states only that the prison term of an inmate convicted of a nonviolent offense '*may* be reduced by the Bureau of Prisons.'" *Id.*, at 1094 (quoting 18 U. S. C. § 3621(e)(2)(B)). This discretionary formulation, the Eighth Circuit reasoned, allows the Bureau to devise a regime based on criteria that can be uniformly applied. The statute grants no entitlement to any inmate or class of inmates, the Court of Appeals noted, and it does not instruct the Bureau to make "individual, rather than categorical, assessments of eligibility for inmates convicted of nonviolent offenses." 186 F. 3d, at 1094. The court further reasoned that, to the extent Congress left a gap in § 3621(e)(2)(B) for the Bureau to fill, deference is owed the BOP's interpretation under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–845, 866 (1984), so long as the interpretation is a permissible construction of the statute. 186 F. 3d, at 1095. The Bureau had elected to deny early release to certain categories of prisoners, notably recidivists and firearms carriers, whose "conduct indicates that they pose a serious risk to public safety." *Ibid.* That decision, the Court of Appeals concluded, "represents a manifestly permissible construction of the statute and an appropriate exercise of the BOP's discretion." *Ibid.*

The Eighth Circuit next explained why its earlier decision in *Martin* did not control this case, which trains on the BOP's 1997 regulation: *Martin* addressed only the Bureau's 1995

attempt to interpret the statutory term "nonviolent offense"; the court in that case did not address "whether the BOP may, as an exercise of its discretion, . . . look to sentencing factors in deciding which individuals among statutorily eligible inmates are appropriate candidates for early release." 186 F. 3d, at 1095. Facing that issue, the Court of Appeals held such an exercise of discretion proper. *Ibid.*

The Courts of Appeals have again divided, now over the permissibility of the Bureau's current (1997) regulation. The Tenth and Eleventh Circuits, in line with their prior decisions invalidating the 1995 rule, have concluded that § 3621(e)(2)(B) permits no categorical exclusions of nonviolent offenders based on sentence enhancements. *Ward* v. *Booker,* 202 F. 3d 1249, 1256–1257 (CA10 2000); *Kilpatrick* v. *Houston,* 197 F. 3d 1134, 1135 (CA11 1999). The Ninth Circuit, on the other hand, has agreed with the Eighth Circuit that precedent invalidating the 1995 rule does not control and that, in 1997, the BOP permissibly exercised its discretion under § 3621(e)(2)(B) when it categorically excluded from early release consideration inmates who possessed a firearm in connection with their nonviolent offenses. *Bowen* v. *Hood,* 202 F. 3d 1211, 1218–1220 (2000).

We granted certiorari to resolve this conflict, 529 U. S. 1086 (2000), and now affirm the judgment of the Eighth Circuit.

## II

The statute provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons . . . ." 18 U. S. C. § 3621(e)(2)(B). The measure thus categorically denies early release eligibility to inmates convicted of violent offenses. The question we address is whether the Bureau has discretion to delineate, as an additional category of ineligible inmates, those whose current offense is a felony involving a firearm. 28 CFR § 550.58(a)(1)(vi)(B) (2000).

Lopez urges that the statute is unambiguous. He says that, by identifying a class of inmates ineligible for sentence reductions under § 3621(e)(2)(B), *i. e.,* those convicted of a violent offense, Congress has barred the Bureau from identifying further categories of ineligible inmates. "If Congress wanted the BOP to reduce the categories of inmates eligible for the early release incentive (beyond the one identified by Congress), Congress would have specifically placed this grant of authority in the language of the statute." Brief for Petitioner 23. As to the statutory instruction that the Bureau "may" reduce sentences, Lopez initially suggests it is merely a grant of authority to the BOP to reduce a sentence that, prior to the enactment of § 3621(e)(2)(B), could not be reduced for successful completion of drug treatment: "The power granted was to give reductions not the power to decide who was eligible to receive reductions." *Id.,* at 21. He alternately contends that the Bureau may take into account only "post-conviction conduct," not "pre-conviction conduct." Reply Brief 4–5. Acting on a case-by-case basis, Lopez asserts, the Bureau may "deny early release to those inmates [who] are statutorily eligible, but who do not deserve early release based on their conduct while in prison." *Id.,* at 5. Under this reading, the Bureau may exercise discretion in denying early release, but only on an individual basis, taking account solely of postconviction conduct.

In the Bureau's view, § 3621(e)(2)(B) establishes two prerequisites for sentence reduction: conviction of a nonviolent offense and successful completion of drug treatment. Brief for Respondents 18. If those prerequisites are met, the Bureau "may," but also may *not,* grant early release. The BOP opposes Lopez's argument that Congress barred the Bureau from imposing limitations categorically or on the basis of preconviction conduct. According to the Bureau, Congress simply "did not address how the Bureau should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release." *Id.,* at 23. Because

Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see *Chevron,* 467 U. S., at 844, in a manner that is not arbitrary or capricious, see 5 U. S. C. § 706(2)(A). In this instance, the Bureau urges, it has acted reasonably: Its denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life; accordingly, in the interest of public safety, they should not be released months in advance of completing their sentences.[3]

We agree with the Bureau's position. Preliminarily, we note conspicuous anomalies in Lopez's construction. If § 3621(e)(2)(B) functions not as a grant of discretion to determine early release eligibility, but both as an authorization and a command to reduce sentences, then Congress' use of the word "may," rather than "shall," has no significance. And if the BOP does have discretion to deny early release to certain inmates, but only based on individualized assessments of postconviction conduct, then the agency cannot categorically deny early release even to recidivists with prior (perhaps multiple) convictions for "homicide, forcible rape . . . , or child sexual abuse offenses." 28 CFR § 550.58(a)(1)(iv) (2000). For that provision, as much as the exclusion of inmates imprisoned for offenses involving a firearm, see *supra,* at 235, entails no individualized determination based on postconviction conduct. Furthermore,

---

[3] The dissent straddles the fence, agreeing with Lopez that the statute addresses his case unambiguously, but disagreeing with him on precisely what the statute says. Lopez reads the statute to exclude Bureau consideration of preconviction conduct, Reply Brief 4–5; the dissent reads the same words to permit BOP consideration of such conduct, *post,* at 248 (opinion of STEVENS, J.). These divergent readings hardly strengthen the dissent's assertion that Congress supplied a definitive answer to the "precise question" at issue. See *post,* at 245.

Lopez's position would confine the BOP's discretion under §3621(e)(2)(B) to consideration of factors of the kind the Bureau already may consider in granting credit for "satisfactory behavior." See 18 U. S. C. §3624(b)(1) ("a prisoner [serving a term of more than one year and less than life] may receive credit toward the service of the prisoner's sentence . . . subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with such institutional disciplinary regulations").

We turn now to the Bureau's reading of the statutory text, which instructs that the agency "may" reduce the sentence of a nonviolent offender who has successfully completed a drug treatment program. Congress' use of the permissive "may" in §3621(e)(2)(B) contrasts with the legislators' use of a mandatory "shall" in the very same section. Elsewhere in §3621, Congress used "shall" to impose discretionless obligations, including the obligation to provide drug treatment when funds are available. See 18 U. S. C. §3621(e)(1) ("Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)"); see also, e. g., §3621(b) ("The Bureau shall designate the place of the prisoner's imprisonment. . . . In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status."). Sensibly read, the grant of discretion in §3621(e)(2)(B) to decide whether to reduce a sentence parallels the grant of discretion in §3621(e)(2)(A) to retain a prisoner who successfully completes drug treatment "under such [custodial] conditions as the Bureau deems appropriate." §3621(e)(2)(A). When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.

The constraints Lopez urges—requiring the BOP to make individualized determinations based only on postconviction

conduct—are nowhere to be found in §3621(e)(2)(B). Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so. In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design." *NationsBank of N. C., N. A.* v. *Variable Annuity Life Ins. Co.,* 513 U. S. 251, 257 (1995) (citing *Chevron,* 467 U. S., at 842); see also *Reno* v. *Koray,* 515 U. S. 50, 61 (1995) (deferring to BOP's interpretation of statute). We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

First, as the dissent but not Lopez recognizes, see *post,* at 248, the Bureau need not blind itself to preconviction conduct that the agency reasonably views as jeopardizing life and limb. By denying eligibility to violent offenders, the statute manifests congressional concern for preconviction behavior—and for the very conduct leading to conviction. The Bureau may reasonably attend to these factors as well. Its regulation in this regard is kin to the Attorney General's order upheld in *INS* v. *Yueh-Shaio Yang,* 519 U. S. 26 (1996). That case involved a statute authorizing the Attorney General to waive deportation of aliens deportable for entry fraud. The Attorney General had refused to waive deportation for one alien because of "acts of fraud . . . in connection with his entry." *Id.,* at 27. The alien argued that because the statute made aliens who had committed entry fraud eligible for waiver, the Attorney General was precluded from taking such conduct into account "at all" in deciding whether to grant relief. *Id.,* at 30. We rejected this view, stating

that the statute "establishes only the alien's *eligibility* for the waiver. Such eligibility in no way limits the considerations that may guide the Attorney General in exercising her discretion to determine who, among those eligible, will be accorded grace." *Id.*, at 31. Similarly in this case, the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau. Just as the Attorney General permissibly considered aspects of entry fraud, even though entry fraud was a criterion of statutory eligibility, so the Bureau may consider aspects of the conduct of conviction, even though the conviction is a criterion of statutory eligibility.[4]

We also reject Lopez's argument, echoed in part by the dissent, *post*, at 248–249, that the agency must not make categorical exclusions, but may rely only on case-by-case assessments.[5] "[E]ven if a statutory scheme requires individual-

---

[4] Lopez contends that the Bureau's creation of additional hurdles to receipt of a sentence reduction defeats Congress' purpose of giving inmates an incentive to undergo drug treatment. Brief for Petitioner 24–29. In *INS* v. *Yueh-Shaio Yang*, 519 U. S. 26 (1996), we said that "[i]t could be argued that if the Attorney General determined that *any* entry fraud or misrepresentation, no matter how minor and no matter what the attendant circumstances, would cause her to withhold waiver, she would not be exercising the conferred discretion at all, but would be making a nullity of the statute." *Id.*, at 31. In this case, it is plain that the Bureau has not rendered § 3621(e)'s incentive a nullity. A total of 6,559 inmates have received sentence reductions under § 3621(e)(2)(B), including 2,633 inmates in Fiscal Year 1999 alone. Bureau of Prisons, Substance Abuse Treatment Programs in the Federal Bureau of Prisons, Report to Congress 8 (Jan. 2000). Moreover, inmates who do not qualify for early release, like inmates who do, receive other incentives to participate in substance abuse treatment. See 28 CFR §§ 550.57(a)(1), (3) (2000) ("An inmate may receive incentives for his or her satisfactory involvement in the residential [drug treatment] program," including "[l]imited financial awards" and "[l]ocal institution incentives such as preferred living quarters or special recognition privileges.").

[5] The dissent appears to acknowledge that the Bureau may give "near-dispositive weight to preconviction criteria." *Post*, at 249. To the extent the dissent would permit the BOP to accord heavy weight to preconviction

ized determinations," which this scheme does not, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *American Hospital Assn.* v. *NLRB,* 499 U. S. 606, 612 (1991); accord, *Heckler* v. *Campbell,* 461 U. S. 458, 467 (1983). The approach pressed by Lopez—case-by-case decisionmaking in thousands of cases each year, see *supra,* at 243, n. 4—could invite favoritism, disunity, and inconsistency. The Bureau is not required continually to revisit "issues that may be established fairly and efficiently in a single rulemaking proceeding." *Heckler,* 461 U. S., at 467.[6]

Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.[7]

---

conduct, the structured "[i]ndividualized [BOP] consideration" the dissent would allow, *post,* at 249, seems but a shade different from the forthright categorical exclusion the Bureau has adopted.

[6] *Amici* urge reversal on the ground that the Bureau violated the notice and comment requirements of the Administrative Procedure Act when it published the 1997 regulation. Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 18–24. We decline to address this matter, which was not raised or decided below, or presented in the petition for certiorari. *Blessing* v. *Freestone,* 520 U. S. 329, 340, n. 3 (1997).

[7] Lopez invokes the rule of lenity in urging us to accede to his interpretation. Because, as discussed above, the statute cannot be read to prohibit the Bureau from exercising its discretion categorically or on the basis of preconviction conduct, his reliance on the rule is unavailing. See *Caron* v. *United States,* 524 U. S. 308, 316 (1998) ("The rule of lenity is not invoked by a grammatical possibility. It does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose.").

For the reasons stated, the judgment of the Court of Appeals for the Eighth Circuit is

*Affirmed.*

JUSTICE STEVENS, with whom THE CHIEF JUSTICE and JUSTICE KENNEDY join, dissenting.

The question at issue in this case is whether all, or merely some, of the federal prisoners who were convicted of nonviolent offenses and who have successfully completed a Bureau of Prisons (BOP or Bureau) drug treatment program are eligible for a sentence reduction pursuant to 18 U. S. C. § 3621(e)(2)(B). For the reasons outlined below, I believe that Congress has answered that precise question. The statute expressly states that the sentence of every prisoner in that category "may be reduced." *Ibid.* The disposition of this case is therefore governed by the first step in the familiar test announced in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 842–843 (1984), for "Congress has directly spoken to the precise question at issue." *Id.,* at 842.

I

In drafting the statute in question, Congress was faced with a difficult policy choice: whether the commission of particular crimes made certain categories of offenders so dangerous that the costs of offering them early release in return for the successful completion of a drug treatment program outweighed the rewards. The initial drafts of the bill answered that question in the negative and made all federal prisoners eligible for a sentence reduction of up to one year if they successfully completed a drug treatment program. See, *e. g.,* H. R. Rep. No. 103–320, p. 2 (1993). However, the inclusion of those convicted of violent offenses within the category of those eligible for the inducement soon became a fulcrum of criticism for the larger crime bill within

246

which the statute was embedded.[1] Perhaps as a result of these criticisms,[2] the statute ultimately adopted limited the inducement to "prisoner[s] convicted of . . . nonviolent offense[s]." 18 U. S. C. § 3621(e)(2)(B).

Both the text of the statute and the aforementioned history demonstrate that Congress directly addressed the "precise question" of what offenses ought to disqualify prisoners from eligibility for a sentence reduction, and that its unambiguous answer was "violent offenses." Under the statute as enacted, those who commit crimes of violence are categorically barred from receiving a sentence reduction while those convicted of nonviolent offenses "may" receive such an inducement.

---

[1] Throughout 1993 and 1994, Republican leaders gave numerous speeches contrasting their proposed crime bill and the administration's. One contrast repeatedly stressed was that the Republican bill set aside more money for prison construction while the Democratic bill allocated greater funds to drug treatment. This difference allegedly reflected differing views as to how society should deal with violent criminals. To this end, Republican leaders repeatedly criticized the inclusion of violent criminals in the sentence reduction provision. See, e. g., 139 Cong. Rec. 27209 (1994) (remarks of Sen. Hatch) ("Their treatment allows all Federal prisoners, including the most violent, to have their sentences reduced, if you will, at the Bureau of Prisons' discretion if they complete a drug treatment program. Boy, I can see where everybody is going to do that. You can imagine the sincerity of that"); 139 Cong. Rec. 27460 (1993) (remarks of Sen. Hatch) ("The Democratic crime bill actually permits the Bureau of Prisons to decrease the sentence of Federal inmates—violent offenders included—who complete drug treatment programs. Their bill also proposes that States be given grant money which can be used to implement home confinement and other alternative sanctions for violent offenders").

[2] The House initially approved a version of the bill that would have extended the inducement to all federal prisoners. The Senate, where the criticism of the inclusion of violent offenders was more pronounced, see n. 1, supra, limited the provision to nonviolent offenders. The Conference Committee accepted the Senate's limitation. H. R. Conf. Rep. No. 103–711, p. 381 (1994).

The BOP regulation challenged here operates to redefine the set of prisoners categorically ineligible for a sentence reduction, a set unambiguously defined in the text of the statute. It does so by taking a group of prisoners whose offenses the Bureau acknowledges are "nonviolent" within the meaning of the statute[3] and imposing the same sanction—categorical ineligibility—upon them as the statute imposes upon violent offenders. In so doing, the Bureau ignores Congress' express determination that, when evaluating eligibility for a sentence reduction, the salient distinction is the line between violent and nonviolent offenses. By moving this line, the BOP exceeded its authority and sought to exercise its discretion on an issue with regard to which it has none. See, *e. g.*, *Chevron*, 467 U. S., at 842–843 ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"); *United States* v. *Haggar Apparel Co.*, 526 U. S. 380, 392 (1999) ("In the process of considering a regulation in relation to specific factual situations, a court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control").

---

[3] The BOP regulation challenged here treats an otherwise nonviolent offense where a gun was carried as a "nonviolent offense" within the meaning of the statute, and the case was argued on that assumption. As the majority notes, *ante*, at 233–236, the BOP initially attempted to classify such crimes as violent offenses, but receded when the Courts of Appeals divided over the validity of such a construction. The question over which the Courts of Appeals initially divided is not before us today. If it were, the arguments raised by both sides would be quite different, with the debate likely focusing on whether "nonviolent offense" is best understood as a term of art or in relation to a more colloquial understanding of violence.

## II

I fully agree with the majority that federal prisoners do not become entitled to a sentence reduction upon their successful completion of a drug treatment program; the words "may be reduced" do not mean "shall be reduced." Nonetheless, while the statute does not entitle any prisoner to a sentence reduction, it does guarantee nonviolent offenders who successfully complete a drug treatment program consideration for such a reduction.

For every nonviolent offender who participates in a drug treatment program, the BOP may be required to make two individualized determinations: (1) whether he or she has successfully completed that program; and (2), if sc, whether his or her preconviction conduct, postconviction conduct, and prospects for rehabilitation justify a sentence reduction. In evaluating whether or not a particular individual is entitled to a sentence reduction, the BOP may give great weight to whichever of these factors it determines to be most relevant. That, however, is a far cry from categorically excluding from consideration prisoners who Congress explicitly intended to obtain such consideration.[4]

The majority's concern about the risks and burdens associated with case-by-case decisionmaking in a large number of cases is understandable yet ultimately misguided. In order to fulfill the statute's requirements, the BOP must already

---

[4] This Court's decision in *INS* v. *Yueh-Shaio Yang,* 519 U. S. 26 (1996), relied upon by the majority, *ante,* at 242–243, is not to the contrary. *Yueh-Shaio Yang* did not involve an effort by an administrative agency to categorically exclude from consideration for a benefit a particular class of individuals because of a characteristic considered and rejected by Congress as a basis for categorical exclusion. Rather, that case involved the related yet distinct question whether such a characteristic may be given any weight by the agency in making an individualized case-by-case determination whether to grant the benefit to a particular individual. If the issue in this case were whether the BOP could even consider the nature of the offense in determining whether to grant a particular sentence reduction, *Yueh-Shaio Yang* would be relevant to our analysis.

evaluate every prisoner seeking the sentence reduction on an individual basis to determine whether that prisoner "successfully completed" his or her drug treatment program. Individualized consideration of the second salient question involves consideration of many of the same personalized factors that go into determining whether a prisoner's course of drug treatment has been "successful." To the extent that answering the second question requires consideration of additional factors with a concomitant administrative burden, the costs of such a scheme are, in Congress' judgment, outweighed by the benefits of encouraging drug treatment and of carefully distinguishing between those prisoners who have earned an early return to their communities and those who require further incarceration.

The majority's worry that individualized decisionmaking might lead to "favoritism, disunity, and inconsistency" is similarly misplaced. *Ante,* at 244. To suggest that decisionmaking must be individualized is not to imply that it must also be standardless. If the Court today invalidated the regulation in question, its decision would not preclude the BOP from adopting a uniform set of criteria for consideration in evaluating applications for sentence reductions. Nor would it necessarily preclude the Bureau from giving dispositive weight to certain postconviction criteria or near-dispositive weight to preconviction criteria. Cf. *Heckler* v. *Campbell,* 461 U. S. 458, 467 (1983). The Bureau would remain free to structure its decisionmaking in any way it saw fit as long as in so doing it did not contravene policy decisions explicitly made by the statute's drafters. As Congress has already addressed preincarceration conduct in § 3621(e)(2)(B), the Bureau may not categorically exclude a prisoner not convicted of a violent offense from consideration for early release on the basis of such conduct without exceeding the limits of its discretion.

Accordingly, I respectfully dissent.