AMBRO, Circuit Judge,
dissenting.
Spouses seeking relief from joint and several liability for understatements or underpayments of income taxes look to 26 U.S.C. § 6015. Among other things, it spares innocent spouses when it is equitable to do so. Id. § 6015(b) (dealing with understatements).[9] But to be eligible for relief they must apply within two years after the IRS begins collection activity. Id. § 6015(b).
What if an innocent spouse does not qualify because two years have passed since collection efforts began? It appears there is a safety-valve (Ms. Mannella’s counsel calls it a “catchall”)— § 6015(f). All that it requires, other than showing-relief is not available under subsection (b), is that it not be fair to hold the innocent spouse responsible for the other spouse’s tax liability. The intuitive (indeed, blink) thought, then, is that the time to file under subsection (f) extends beyond two years. After all, it can’t logically be less time, as subsection (b) is available for at least some taxpayers who elect within two years, and thus, one would think, (f) would be available for later applicants.
Is it that easy? Well, no. There is a catch (as opposed to a catchall), we are told. Though subsection (f) enacted by Congress sets no time limit to seek relief, the Department of the Treasury[10] has adopted a Regulation — 26 C.F.R. § 1.6015 — 5(b)(1), complemented by IRS Rev. Proc.2003-61 § 4.01(3)[11] — that does. It is two years.
The United States Tax Court has overruled that deadline, Mannella v. C.I.R., 132 T.C. 196 (2009), and the IRS appeals. Its argument, which won in the Seventh Circuit Court’s decision in Lantz v. C.I.R., 607 F.3d 479 (7th Cir.2010), is essentially that Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), requires us to defer to its judgment, as that judgment is reasonable.
The Tax Court, whose hands heretofore were tied only in the Seventh Circuit,[12] reasons that the Regulation is invalid under step one of Chevron’s procedure for reviewing an agency’s construction of a statute it administers because Congress has spoken directly to the issue involved. Specifically, the Tax Court reasons that the Regulation “runs directly contrary to the nature of the relief provided in section *127 6015(f).” 132 T.C. at 202. And even were subsection (f) deemed silent or ambiguous, “a 2-year limitations period is not a permissible construction of [that provision], and therefore [the Regulation] is invalid under Chevron step 2,” id., which holds that congressional silence or ambiguity on a specific issue confers on the administrative agency the power to construe the statute in any way that is permissible (that is, reasonable).
I agree with my colleagues, and not the Tax Court, that Congress has not spoken directly on what the timeframe under subsection (f) must be. Indeed, the subsection is literally silent.[13]
In that case, Chevron’s second step comes into play. My colleagues, and all three members of the panel in Lantz, hold that the Regulation passes muster. They reason, per Chevron, that deference is due an agency’s construction of a statute it implements, i.e., a presumption of validity attends that construction. Thus, though Ms. Mannella’s position has “support,” Maj. Op. at 124, and “[t]he arguments against the Tax Court’s interpretation of subsection (f) as barring a fixed deadline ... are powerful,” Lantz, 607 F.3d at 486, they do not overcome that presumption. Put another way, that some, or even most, courts would have chosen a different deadline than that picked by the IRS is irrelevant, as the Supreme Court has settled since 1984 who gets first call in construing the statute.[14]
But that first call must be reasonable. It is hard to say that is so when the IRS gives no reasons for “addfing] a new threshold requirement,” Rev. Proc.2003-61 § 3.01, for subsection (f) eligibility. “It is well-established that an agency’s action must be upheld, if at all, on the basis articulated by the agency itself.” Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Here, however, the IRS has not advanced any reasoning for its decision to impose a two-year limitations period on taxpayers seeking relief under subsection (f), leaving us no basis to conduct the analysis mandated by Chevron step two.
There may exist justifications on which the IRS could have reasonably relied in order to impose a two-year limit on subsection (f) relief. The problem is that there are also arbitrary and capricious reasons that, if articulated by the Service as the basis for the two-year limit, would require us to strike down that limit — for example, if the IRS enacted the two-year deadline based on an incorrect belief that the statute required it, or based on a factual supposition belied by the administrative record. See, e.g., Zheng v. Gonzales, 422 F.3d 98, 120 (3d Cir.2005) (rejecting immigration regulation at Chevron step two because it was based on an impermissible *128 reading of the 8 U.S.C. § 1255(a)). Because the IRS has not articulated its reasoning, we cannot discern whether the two-year limit falls into the permissible, or the arbitrary and capricious, category.
Into the vacuum left by the IRS the Lantz Court has injected reasoning of its own, which my colleagues cite at length. But it is black-letter law — and a necessary corollary of the deference owed to agencies — that courts may not supplement deficient agency reasoning. Sec. & Exch. Comm’n v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.”). Thus, the Lantz Court’s surrogate surmising of agency reasons does not, I believe, save the two-year limit.[15]
Further, I do not find Lantz’s reasoning in support of the two-year limit to be convincing. I will address those reasons, which my colleagues seemingly endorse, in turn.
1. Reason: The Lantz Court wrote that, absent a two-year deadline in (f), the two-year deadline in (b) would be made superfluous, as “the substantive criteria of th[at] section[] are virtually the same as those of (f).” Lantz, 607 F.3d at 484. Indeed, it took this thought even further by stating that “[h]ad the Treasury decided to impose no deadline on the filing of claims under subsection (f), or even just a deadline longer than two years, or in lieu of a fixed deadline the flexible deadline of the laches doctrine, it would have been undermining the two-year deadline fixed by Congress in subsection[ ] (b).” Id.
Response: To begin, to the extent that it is correct that the “substantive criteria” of (b) and (f) are “virtually the same,” id. at 484, then Lantz’s approach renders subsection (f) superfluous, which cannot be what Congress intended. As Lantz later notes, however (and the majority agrees, Maj. Op. at 122), there is a large class of taxpayers who would be eligible for relief under (f), but not (b), because the latter, unlike the former, applies only to: (i) tax understatements, and not tax underpayments; id. at 486; and (ii) spouses who lacked actual or constructive knowledge of the understatement.
Moreover, subsection (f) will not “under-min[e]” the two-year deadline imposed in subsection (b) even as to those taxpayers who (but for the two-year limit) might qualify under both subsections. Of significance, (f) is discretionary, whereas (b) is mandatory. Compare § 6015(f) (“the Secretary may relieve [the innocent spouse] of such liability”), with § 6015(b) (“the [innocent spouse] shall be relieved of liability for tax”) (emphases added). Thus, even if (f) has no time limit, taxpayers who might qualify under (b) would be well-advised to file in time to take advantage of that mandatory provision instead of waiting to seek discretionary relief under (f). Put another way, Congress could have chosen to free the IRS to afford discretionary relief to innocent spouses who missed the two-year *129 deadline in certain exceptional cases, while maintaining the two-year limitations period for the mine-run of cases.
In addition, as my colleagues note, Maj. Op. at 123-24, Congress amended 26 U.S.C. § 66 (addressing the treatment of community property when spouses do not file joint returns in community-property states) by adding a subsection (c) at the same time it added subsection (f) to § 6015, and the language of each subsection mirrors the other. Statements in the legislative history of § 66(c) indicate that the IRS should consider the timing of the request for relief. H.R.Rep. No. 98-432, pt 2, at 1501 & 03 (1984), 1984 U.S.C.C.A.N. 697, 1142 & 1144 (the IRS should consider, inter alia, “whether the defense was promptly raised so as to prevent the period of limitations from running on the other spouse”). Moreover, the Tax Court pointed out in its decision now reversed by the Seventh Circuit that, “[i]n [the] announcement of the proposed regulations under [§] 66(c), 67 Fed.Reg. 2841 (Jan. 22, 2002), the Secretary [of the Treasury] observed that the relief provided in sec. 66(c) is analogous to the relief provision in section 6015(b) * * * [and] section 6015(f).” Lantz v. C.I.R., 132 T.C. 131, 142 n. 9 (2009), overruled by 607 F.3d 479 (7th Cir.2010).
2. Reason: The Lantz Court also observed that “[s]ince the government can refuse to grant equitable relief to someone who meets the statutory criteria and applies within two years of the first collection action, why can’t it decide to deny relief to a class of applicants defined as those who waited too long?” 607 F.3d at 485 (emphasis in text).
Response: I agree that the answer to this rhetorical question is that the Secretary can exercise the discretion granted by subsection (f) either case-by-case or categorically. Cf. Lopez v. Davis, 531 U.S. 230, 243-44, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (Bureau of Prisons could exercise its discretion to reduce the sentences of certain prisoners on a categorical basis). However, because it is not clear why the IRS promulgated the two-year limit (or whether it even purported to do so as an exercise of its discretion at all, rather than out of a misguided perception of what the statute required), its authority to exercise its discretion categorically should not save the two-year limit the Regulation by ukase imposes.
3. Reason: Though “innocent spouses who fall through the cracks in (b),” Lantz, 607 F.3d at 484., have the safety protection of (f), “[t]he details ... were left to the Treasury Department to work out....” Id. The preamble to (f) confers on the Secretary of the Treasury the right to prescribe “procedures” to relieve individuals of liability on joint income tax returns. When claims may be brought is such a procedure. “Congress’s authorizing an agency to grant discretionary relief under procedures that the agency is to devise itself ... writes the agency a blank check; and one of the blanks on the check is the deadline for applying for such relief.” Id. at 485.
Response: If the preamble to both subsections (b) and (f) is “[u]nder procedures prescribed by the Secretary,” and (b) has a deadline of two years while (f) does not, then is not that deadline substantive rather than procedural? Procedures here cover how to go about making a request for relief, and limitations periods are generally considered substantive. Cf. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir.2007) (statutes of limitation are substantive, not procedural, for purposes of determining whether state or federal law applies in diversity cases). More specifically, in the tax context “a time bar is not simply a procedural rule. In the case of equity, it *130 has the substantive effect of making one circumstance, the time of the claim, the only relevant factor.” Hall v. C.I.R., 2010 WL 3703837 *3 (U.S.Tax Ct.).
4. Reason: Finally, the Lantz Court observed that the IRS could impose a deadline for subsection (f) applications “designed to reduce the flow to manageable proportions.” 607 F.3d at 486.
Response: While it may be true that the IRS could impose a deadline in order to reduce the sheer number of applications for relief under subsection (f), that observation is of little relevance here, where there is no administrative (or other) record of an unmanageable flow of late-filed exemption applications.
‡ ‡ ‡ ‡
To deny taxpayers who miss the deadline to invoke subsection (b) even a chance to make an equitable exemption claim under (f) is eoncededly “harsh.” Id. Those taxpayers are left in a Catch-22 paradox: they are ineligible to seek an exemption under (f) unless ineligible under (b), but once ineligible as to timing under the latter they can’t be eligible under the former. The take-away thought for some may be that Congress could have drafted directly (or more clearly) but it didn’t, and now the agency gets to make the gatekeeping rules. But the agency only gets to do so within reason.
And there’s the rub. It gave no reasons. Courts thus make up or surmise reasons (and even they underwhelm). Is this the proper way to review interpretive decisions by agencies?
The Supreme Court has answered that question in the negative. To repeat: “[i]t is well-established that an agency’s action must be upheld, if at all, on the basis articulated by the agency itself.” Motor Vehicle Mfrs. Ass’n, 463 U.S. at 50, 103 S.Ct. 2856. When courts ignore that admonition, Chevron becomes an exit ramp to the twilight zone by “relieving] the pressure on agencies to develop a full, expert record.... ” Elizabeth V. Foote, Statutory Interpretation or Public Administration: How Chevron Misconceives the Function of Agencies and Why it Matters, 59 Admin. L.Rev. 673, 710 (Fall 2007). In this way, “[r]eviewing courts can brush off serious challenges to agency decisions by invoking Chevron without engaging whether the agency is thwarting imperfectly expressed congressional intent.” Beerman, End the Failed Chevron Experiment Now: How Chevron Has Failed and Why It Can and Should be Overruled, 42 Conn. L.Rev. at 784. I believe this is what happened here, and thus respectfully dissent.

. Section 6015(c) also provides relief for certain divorced or separated taxpayers, and for these persons imposes an explicit two-year statute of limitations. However, it is of little relevance to our case and is not discussed in this dissent.

. I use "Department of the Treasury,” "Secretary” (or "Secretary of the Treasury”), the "Service,” and "IRS” interchangeably.

. See also Rev. Proc.2000-15 § 4.01(3).

. See Golsen v. Commissioner, 54 T.C. 742, 1970 WL 2191 (1970), aff'd 445 F.2d 985 (10th Cir.1971) (determining that the Tax Court must apply the law of the Court of Appeals to which an appeal for that case would later lie).

. That said, the Tax Court's reasoning is not so specious that it deserves to be dismissed as simply oxymoronic by its use of "audible silence.” Lantz, 607 F.3d at 481. That gibe, however, does sidestep another oxymoron— humble pedantry.

. As this is settled law, I don’t enter the well-vetted briarpatch of whether the Supreme Court should have accorded agencies of the Executive Branch interpretive powers that courts thought by tradition belonged to them. See generally Jack M. Beerman, End the Chevron Experiment Now: How Chevron Has Failed and Why It Can and Should he Overruled, 42 Conn. L.Rev. 779 (2010); Cass R. Sunstein, Law and Administration After Chevron, 90 Colum. L.Rev.2071 (1990); Cynthia R. Farina, Statutory Interpretation and the Balance of Power in the Administrative State, 89 Colum. L.Rev. 452 (1989); Joseph F. Weis, Jr., A Judicial Perspective on Deference to Administrative Agencies: Some Grenades From the Trenches, 2 Admin. L.J. 301 (1988).

. My colleagues largely do not engage in this exercise (though nothing they write shows disagreement), instead rejecting Ms. Mannella's arguments against the two-year limit because they do not “clearly demonstrate that Congress intended that requests for relief under subsection 6015(f) not be subject to a two-year filing deadline.” Maj. Op. at 124. By this approach my colleagues place on Ms. Mannella the burden (a heavy one, at that) of proving that it is not reasonable to adopt a deadline backed by no reason. I do not buy this approach. Moreover, it also ducks the critical inquiry — whether the IRS’s reason for implementing the two-year limit was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). By abjuring reason, the IRS, I believe, abuses its discretion.