**Jon MINOTTI, Plaintiff**

**v.**

J.D. WHITEHEAD[1], Warden
FCI–Cumberland, et al.,
Defendants.

Craig Overman, Plaintiff

v.

J.D. Whitehead, Warden FCI–
Cumberland, et al.,
Defendants.

John Sherman Floyd, Petitioner

v.

J.D. Whitehead, Warden FCI–
Cumberland, Respondent.

Civil Case Nos. RWT–08–1418, RWT–
08–2084, RWT–08–1018.

United States District Court,
D. Maryland.

Oct. 31, 2008.

---

[1]. The respective petition for habeas corpus and complaints name Lisa Hollingsworth as the warden of the Federal Corrections Institute in Cumberland, Maryland. J.D. Whitehead has since become the warden and thus is the proper party Respondent. 28 U.S.C. §§ 2242, 2243; *Ex parte Endo*, 323 U.S. 283, 306, 65 S.Ct. 208, 89 L.Ed. 243 (1944) (habeas corpus petitions should be directed to the warden of the facility housing the inmate). Further, BOP Director Harley Lappin and the BOP will be dismissed as Respondents. *Rumsfeld v. Padilla*, 542 U.S. 426, 442, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) (holding that higher level executive officials are not proper party respondents to a habeas petition as only the warden should be named and served as the respondent).

Brian W. Shaughnessy, Shaughnessy, Volzer, Gagner, PC, Washington, DC, for Plaintiff.

John Sherman Floyd, Cumberland, MD, pro se.

Kenneth Adebonojo, U.S. Attorney's Office, Washington, DC, Jason Daniel Medinger, Office of the United States Attorney, Baltimore, MD, for Defendants.

Melanie L. Glickson, Maryland Office of the United States Attorney, Baltimore, MD, for Defendants/Respondent.

Allen F. Loucks, Office of the United States Attorney, Baltimore, MD, for Respondent.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

Congress enacted 18 U.S.C. § 3621(e)(2)(B) to give the Bureau of Prisons ("BOP") the authority to reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the prisoner successfully completes a substance abuse program. The BOP adopted an implementing regulation that categori-cally denied early release to prisoners whose offense of conviction was a felony attended by "the carrying, possession, or use of a firearm." 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000). Resolving a split among the circuits over the validity of this regulation, the United States Supreme Court granted certiorari in *Lopez v. Davis,* 531 U.S. 230, 244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), and held that the BOP's regulation was a permissible exercise of the discretion delegated to it by Congress under 18 U.S.C. § 3621(e)(2)(B). In so holding, however, the Supreme Court expressly declined in footnote six of its opinion to address a question raised by an amicus as to whether the BOP had violated the notice and comment requirements of the Administrative Procedure Act when it published its interim implementing regulation. *Id.* at n. 6.

Earlier this year, the United States Court of Appeals for the Ninth Circuit addressed this unresolved issue in *Arrington v. Daniels,* 516 F.3d 1106, 1116 (9th Cir.2008), and held that the BOP had violated the Administrative Procedure Act because it failed to articulate a rational basis for the manner in which it exercised its discretion and thus the interim implementing regulation was arbitrary and capricious. In the wake of *Arrington,* a number of federal district courts confronting the validity of the BOP's interim regulation (and final regulation, which is identical in every regard to the interim regulation) have questioned *Arrington's* reasoning and declined to follow suit.

For the reasons that follow, this Court also finds the reasoning in *Arrington* unpersuasive and declines to follow it. Thus, the Court upholds the BOP's decision to categorically deny early release to prisoners whose current offense was a felony attended by "the carrying, possession, or use of a firearm." 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000).

## BACKGROUND

In the consolidated cases before the Court, three federal inmates incarcerated at the Federal Correctional Institute ("FCI") in Cumberland have filed separate actions alleging that the BOP's final regulation that excludes them from eligibility for early release under § 3621 is arbitrary and capricious (citing *Arrington* ) and that their convictions should be considered "nonviolent." Respectively, they sought either habeas or injunctive relief, and are collectively referred to in this opinion as the "Plaintiffs." Their cases were consolidated because they contain substantially similar legal arguments and factual circumstances.

### (i) The Parties

Jon Minotti, the plaintiff in Civil Case No. RWT–08–1418, is currently serving a three year term of imprisonment at FCI–Cumberland to be followed by four years of supervised release. He seeks declaratory and injunctive· relief as to the validity of the BOP's final regulation.

Craig Overman, the plaintiff in Civil Case No. RWT–08–2084, is currently serving a four year term of imprisonment at FCI–Cumberland. Overman also seeks declaratory and injunctive relief.

John Sherman Floyd, the *pro se* petitioner in Civil Case No. RWT–08–1018, is currently serving a sixty month term of imprisonment at FCI—Cumberland to be followed by three years of supervised release. Floyd petitions for the issuance of a writ of habeas corpus, raising essentially the same legal grounds as Minotti and Overman.

All three Plaintiffs pleaded guilty to drug offenses.[2] All three Plaintiffs were either convicted of a firearms offense or received a two-point weapons sentencing enhancement.[3] Each was deemed eligible to participate in RDAP but provisionally determined to be ineligible for early release due to a conviction for a firearms offense or receipt of the two-point weapons sentencing enhancement. Had Plaintiffs Minotti and Overman been deemed eligible for early release, they would have already been transferred to a residential re-entry center (i.e., a half-way house) because they have completed the first phase of the RDAP (which requires a 500–hour residential program); Petitioner Floyd seeks a

2. Minotti pleaded guilty and was convicted of (1) conspiracy to distribute and possession with intent to distribute cocaine, (2) possession of cocaine with intent to distribute, (3) aiding and abetting (two counts), (4) using or carrying a firearm during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking offense, and (5) conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), 18 U.S.C §§ 2, 924(c)(1)(A), and 21 U.S.C. § 846. Overman pleaded guilty and was convicted of (1) conspiracy to distribute and possess with intent to distribute more than 500 grams of Ecstasy, and (2) carrying, use, and/or possession of a firearm during and in relation to a drug trafficking crime and aiding and abetting in violation of 21 U.S.C. §§ 846 and 18 U.S.C. § 924(c)(1)–(2). Floyd pleaded guilty and was convicted of one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine and five counts of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a), (a)(1).

3. Minotti pleaded guilty and was convicted of using or carrying a firearm during and in relation to a drug trafficking crime and possession of a firearm in further of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A). Overman pleaded guilty and was convicted of carrying, use, and/or possession of a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)–(2). Floyd received a two-point weapons sentencing enhancement under United States Sentencing Guideline § 2D1.1(b)(1).

declaration that he is eligible to receive early release credit toward the term of his imprisonment. All three Plaintiffs exhausted the administrative remedy process.[4]

### (ii) The Residential Drug Abuse Program ("RDAP")

18 U.S.C. § 3621 governs the imprisonment of persons convicted of federal crimes. Congress amended this statute in 1990 and directed the BOP to provide residential substance abuse treatment programs for prisoners who were determined to have a treatable condition of substance addiction or abuse. Crime Control Act of 1990, Pub.L. No. 101–647, § 2903, 104 Stat. 4913 (codified at 18 U.S.C. § 3621(b)). Congress amended the statute again in 1994 to provide an early release incentive to encourage prisoner participation in these residential substance abuse treatment programs. Violent Crime Control and Law Enforcement Act of 1994, 103 Pub.L. No. 322, § 32001, 108 Stat. 1796, 1896–97 (codified at 18 U.S.C. § 3621(e)(2)(B)). Under the amended federal statute, the BOP may reduce, by up to one year, the prison term of a prisoner who was convicted of a nonviolent felony and who successfully completes a residential drug abuse treatment program ("RDAP"). 18 U.S.C. § 3621(e)(2)(B); see also H.R.Rep. No. 103–320, 103 Cong., 1st Sess. 6 (1993) ("this subparagraph authorizes [the BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed [the RDAP]" and was convicted of a nonviolent offense).

The BOP operates the RDAP in order to assist prisoners in overcoming their substance abuse problems. BOP Program Statement 5330.10, Drug Abuse Programs Manual–Inmate, Chapter 5, Residential Drug Abuse Treatment Programs, at www.bop.gov. The RDAP has three phases. The first phase is the residential unit component, which lasts a minimum of 500 hours over a six to twelve-month period. Id.; 28 C.F.R. § 550.56. Drug abuse treatment specialists and the drug abuse treatment coordinator operate a treatment unit, which is set apart from the general prison population, that focuses on individual and group activities. BOP Program Statement 5330.10. After the successful completion of the first phase, the second phase of the program is the institution transitional services component. Id. Inmates are provided counseling support for a minimum of one hour per month over a period of twelve months while the inmates transition back into the general prison population. Id. The third phase of the program is the community transitional services component, which lasts up to six months when the inmate is transferred to a community corrections center or to home confinement. Id. Inmates participate in drug treatment programs and receive counseling support in a community-based program to aid their transition back into their communities. Id. To have successfully completed the RDAP, an inmate must complete the residential portion of the program (i.e. the first phase) and any of the applicable transitional services components (i.e. the second or third phases if they apply). 28 C.F.R. § 550.56. Participation in the RDAP is strictly voluntary. Id. The BOP, however, has and continues to offer incentives to inmates who participate, including the early release incentive provided for in 18 U.S.C. § 3621 under which the BOP Director may reduce the sentence of an inmate convicted of a nonviolent offense who successfully completes the RDAP. 28 C.F.R. §§ 550.57; 550.58.

---

4. The Prison Litigation Reform Act, 18 U.S.C. § 3626, provides that prisoners seeking relief must, inter alia, exhaust prison grievance procedures prior to filing suit. This is a mandatory requirement but does not divest a reviewing court of jurisdiction. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007).

### (iii) The "Nonviolent Offense" Requirement

Congress did not define the term "nonviolent offense" in the statute and authorized the BOP to use its discretion in the implementation of the statute. Pursuant to this discretion, the BOP amended its rule and corresponding regulation on drug abuse treatment programs in May 1995 in order to implement the early release incentive Congress provided for in § 3621 (hereinafter "the 1995 Rule"). 60 Fed. Reg. 27692–27695 (May 25, 1995); 28 C.F.R. § 550.58 (1995). Because § 3621 explicitly confined the early release incentive to prisoners convicted of "nonviolent offense[s]," the BOP categorized as ineligible for early release all inmates currently incarcerated for "crime[s] of violence." 60 Fed.Reg. 27692. The BOP's accompanying Program Statement explained that because the term "nonviolent offense" was not defined by Congress in the statute, the BOP would rely on the definition of "crime of violence" in another federal statutory provision, 18 U.S.C. § 924(c)(3). BOP Program Statement No. 5162.02, § 9 (July 24, 1995); 28 C.F.R. § 550.58 (1995). A "crime of violence" is defined by 18 U.S.C. § 924(c)(3)(A)–(B) as a felony that "has as an element the use, attempted, use, or threatened use of physical force against the person or property of another, or ... that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A)–(B). Therefore, the regulation and 1995 Rule rendered ineligible for early release under § 3621 those "inmates whose current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)." 60 Fed.Reg. 27692 (May 25, 1995); 28 C.F.R. § 550.58 (1995). Thus, the Program Statement excluded prisoners who had convictions for firearms offenses under 18 U.S.C. 922(g) [5] or convictions for drug trafficking offenses under 21 U.S.C. § 841 [6] or § 846 [7] that led to a two-level sentencing enhancement for weapons possession under United States Sentencing Guideline § 2D 1.1(b)(1) [8] from eligibility for early release under § 3621. [9] The Courts of Appeals divided over the validity of the BOP's definition of "crime of violence" to include drug offenses that involved possession of a firearm. [10]

---

**5.** 18 U.S.C. § 922(g) provides that it is unlawful for a felon to possess a firearm.

**6.** 21 U.S.C. § 841 provides that it is unlawful "to manufacture, distribute, or dispense, a controlled substance," or "to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

**7.** 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

**8.** U.S.S.G. § 2D1.1(b)(1) provides for a two-level sentence enhancement if a dangerous weapon such as a firearm was possessed "in connection with" the commission of a drug offense.

**9.** The BOP also "[e]xercis[ed] [its] discretion in reducing a sentence" to exclude from early release eligibility inmates who had a prior conviction "for homicide, forcible rape, robbery, or aggravated assault." 60 Fed.Reg. 27692 (codified at 28 C.F.R. § 550.58 (1995)).

**10.** The Fourth, Fifth, and Seventh Circuits held that the BOP could disqualify those prisoners from eligibility for early release. See *Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir.1999); *Parsons v. Pitzer*, 149 F.3d 734, 737–39 (7th Cir.1998); *Venegas v. Henman*, 126 F.3d 760, 763 (5th Cir.1997). On the other hand, the Third, Eighth, Ninth, Tenth, and Eleventh Circuits held that the BOP was required to consider those prisoners who had convictions under 18 U.S.C. § 922(g) and 21 U.S.C. § 841 and § 846 regardless of whether those prisoners had received the U.S.S.G. § 2D1.1(b)(1) two-level sentencing enhance-

Due to the Courts of Appeals's conflicting interpretations of the 1995 Regulation and its accompanying Program Statement, the BOP in 1997 amended its 1995 Regulation. 62 Fed.Reg. 53690–53691 (Oct. 15, 1997) (hereinafter "the 1997 Interim Rule"). Like the 1995 Rule, the 1997 Interim Rule excluded from eligibility for early release those prisoners who had been convicted of an offense "involv[ing] the carrying, possession, or use of a firearm or other dangerous weapon or explosives." 62 Fed.Reg. 53690; 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). Unlike the 1995 Rule, the 1997 Interim Rule did not define either the term "crime of violence" (as the 1995 Rule had by reference to § 924(c)(3)) or the term "nonviolent offense" (which was still undefined by the statute). 62 Fed.Reg. 53690. Instead, the 1997 Interim Rule sought to "avoid this complication by using the discretion allowed to the Director of the BOP in granting a sentence reduction to exclude inmates whose current offense is a felony" that "involved the carrying, possession or use of a firearm." 62 Fed.Reg. 53690; 28 C.F.R. § 550.58(a)(vi)(B) (1997).

To achieve consistency, the BOP, pursuant to the BOP's asserted discretion to prescribe additional early release criteria, enumerated certain categories of offenses for which an inmate would be ineligible for early release. 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). The BOP then promulgated Program Statement 5162.04, which exercised the BOP Director's discretion to exclude from eligi-

bility for early release under § 3621 enumerated nonviolent offenses such as convictions for firearms offenses under 18 U.S.C. 922(g) or convictions for drug trafficking offenses under 21 U.S.C. § 841 or § 846 that led to a two-level sentencing enhancement for weapons possession under United States Sentencing Guideline § 2D1.1(b)(1). These categories of offenses had previously been excluded under the 1995 Regulation and Program Statement. Federal circuits split over whether the categorical exclusion of those prisoners was a permissible exercise of the agency's discretion conferred by Congress under 18 U.S.C. § 3621(e).[11]

### (iv) The United States Supreme Court's Decision in Lopez

The United States Supreme Court granted certiorari to resolve the circuit split. In *Lopez v. Davis*, the Supreme Court upheld the validity of the BOP's 1997 Interim Rule, concluding that the BOP permissibly exercised the discretion that Congress had afforded it under § 3621 to narrow the class of prisoners eligible for early release, specifically by limiting eligibility for the early release sentence reduction to nonviolent offenders. 531 U.S. 230, 239–44, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). The Supreme Court noted that the 1997 Interim Regulation was "reasonable both in taking account of preconviction conduct and in making categorical exclusions" because the BOP "need not blind itself to preconviction conduct

ment. *See Fristoe v. Thompson*, 144 F.3d 627, 631 (10th Cir.1998); *Byrd v. Hasty*, 142 F.3d 1395, 1397–98 (11th Cir.1998); *Martin v. Gerlinski*, 133 F.3d 1076, 1079–80 (8th Cir.1998); *Roussos v. Menifee*, 122 F.3d 159, 162–64 (3d Cir.1997); *Downey v. Crabtree*, 100 F.3d 662, 668 (9th Cir.1996).

11. The Eighth and Ninth Circuits held that the BOP's 1997 Interim Rule, which categorically excluded some prisoners from early con-

sideration, was a permissible exercise of the BOP's discretion to determine the eligibility of prisoners for early release under § 3621(e). *See Bowen v. Hood*, 202 F.3d 1211, 1220 (9th Cir.2000); *Bellis v. Davis*, 186 F.3d 1092, 1095 (8th Cir.1999). Reaching the contrary result were the Tenth and Eleventh Circuits. *See Ward v. Booker*, 202 F.3d 1249, 1256–57 (10th Cir.2000); *Kilpatrick v. Houston*, 197 F.3d 1134, 1135 (11th Cir.1999).

that the [BOP] reasonably views as jeopardizing life and limb." *Id.* at 242, 121 S.Ct. 714. Significantly, the Supreme Court noted that the BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Id.* at 244, 121 S.Ct. 714. In reaching its decision, the Supreme Court, however, expressly declined to address an issue raised by an amicus as to whether "[the BOP] violated the notice and comment requirements of the Administrative Procedure Act when it published the 1997 regulation" because it was not raised in the lower courts or presented in the petition for certiorari. *Id.* at 244 n. 6, 121 S.Ct. 714.

### (v) The BOP's Final Rule in 2000

While the Supreme Court's decision in *Lopez* was pending, the BOP promulgated a final rule in December 2000 (hereinafter "the 2000 Final Rule"), which was identical to the 1997 Interim Rule. 65 Fed.Reg. 80745–49 (Dec. 22, 2000). The commentary to the 2000 Final Rule responded to approximately 150 comments the BOP had received from individuals and organizations. *Id.* The 2000 Final Rule explained that because "Congress did not mandate that all eligible inmates must receive the early release incentive," "[t]he reduction in sentence is an incentive to be exercised at the discretion of the [BOP]" under § 3621 to narrow the class of prisoners eligible for early release by excluding those convicted of offenses involving the carrying, possession, or use of a firearm or other dangerous weapon or explosives. 65 Fed.Reg. 80745, 80747–48 (Dec. 22, 2000). The BOP further explained in the "summary of changes" section of the 2000 Final Rule that it had promulgated and adopted the 1997 Interim Rule and the 2000 Final Rule "[d]ue to varying interpretations of the regulations in the case law," and the need for a "uniform and consistent" national policy. *Id.*

### (vi) The Ninth Circuit's Decision in Arrington

In February 2008, the Ninth Circuit issued its opinion in *Arrington v. Daniels*, a case in which federal prisoners, who had been convicted of offenses involving the carrying, possession, or use of a firearm or other dangerous weapon or explosives, filed petitions for habeas corpus under 28 U.S.C. § 2241 challenging the 2000 Final Rule. 516 F.3d 1106 (9th Cir.2008). The Ninth Circuit held that the BOP's rationale for adopting the 2000 Final Rule violated § 706(2)(A) of the Administrative Procedure Act ("APA") because the BOP did not explain why its goal of uniform and consistent application of the 2000 Final Rule could not have been accomplished by "categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release" rather the BOP's decision to categorically exclude them; the Ninth Circuit held that the BOP's "lack of explanation for its choice render[ed] its decision arbitrary and capricious." *Id.* at 1114.

### STANDARD OF REVIEW

#### A. Review on the Merits

Plaintiffs Minotti and Overman both filed motions for a preliminary injunction and a hearing was held on October 1, 2008. Fed.R.Civ.P. 65(a)(2) permits the district court in an appropriate case to hear a motion for preliminary injunction and conduct a hearing on the merits at the same time. *See Gellman v. Maryland,* 538 F.2d 603, 604 (4th Cir.1976) (citation omitted). The Fourth Circuit has held that Rule 65(a)(2) requires that "before consolidation of a trial on the merits with a hearing on a motion for preliminary injunction is appropriate, 'the parties should normally receive

clear and unambiguous notice to that effect either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'" *Id.* at 603; *aaiPharma, Inc. v. Thompson,* 296 F.3d 227, 234 (4th Cir. 2002).

Here, at the hearing held on October 1, 2008, the Court at the outset suggested to counsel for Minotti and Overman that it would be logical to advance to the merits of the two injunction actions pursuant to Federal Rule of Civil Procedure 65(a)(2) because the issues presented were purely legal and all the parties had had the opportunity to submit additional filings, which would be considered. Counsel for Plaintiffs Minotti and Overman did not object nor did counsel for the BOP. The Court then commenced the hearing, heard arguments from the parties, and took the matter under advisement at the conclusion of the hearing.

**B. Judicial Review Under the Administrative Procedure Act**

▮ In determining the validity of an agency regulation in light of its authorizing statute, the Court must determine whether the statute directly addresses the issue because the Court and the agency must defer to clear Congressional intent. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute is silent or ambiguous, the Court must determine whether the agency's interpretation is based upon a "permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

▮ "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," which is considered a legislative rule that the Court must accord "controlling weight unless [it] is arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778. However, if the agency has promulgated an interpretative rule that clarifies an ambiguous term in the statute in the statute or explains how a statutory provision operates, the Court should accord "considerable weight" and uphold it if it implements the Congressional mandate in a reasonable manner. *Id.*; *see also Snowa v. Comm'r of Internal Revenue,* 123 F.3d 190, 195–97 (4th Cir.1997) (citing *Nat'l Muffler Dealers Ass'n, Inc. v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979)). A policy statement, which is not either a legislative or interpretative rule, does not carry as much weight but is "nonetheless entitled to 'some deference,'" *Pelissero,* 170 F.3d at 447 (internal citation omitted), but only to the extent that it has "the power to persuade." *See Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The persuasive power of a policy statement depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those facts which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. Where an agency is interpreting an ambiguous regulation, deference is appropriate. *See Cunningham v. Scibana,* 259 F.3d 303, 306 (4th Cir.2001).

*ANALYSIS*

▮ Plaintiffs contend that the 2000 Final Rule violated the proscription against arbitrary and capricious agency action contained within the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). The BOP contends that the organic statute precludes the Court's judicial review of its

adjudication and, even if the Court determines that judicial review is proper, the 2000 Final Rule and accompanying Program Statement 5162.04 are interpretative rules that are not subject to the "notice and comment" requirements and that both are permissive and reasonable interpretations of the statute from which the BOP derives its authority. The Court addresses each issue in turn.[12]

12. Plaintiffs raise several other challenges, which merit brief attention. First, they contend that the BOP was factually incorrect in applying the 2000 Final Rule to them because they did not "use, possess, or carry a firearm in connection with a drug offense." Here, the respective plea agreements demonstrate that Floyd, Minotti, and Overman pleaded guilty to counts including the possession of firearm charges and that none of them disputed the factual basis for their guilty pleas on those charges nor have any of them sought direct review of those convictions or asserted that their pleas were involuntary. *See* Floyd Plea Agreement at 3 (acknowledging receipt of a two-point sentence enhancement under USSG § 2D1.1(b)(1) for possession of a firearm); Minotti Plea Agreement at 1 (violation of 18 U.S.C. §§ 2, 924(c)(1)(A)); Overman Plea Agreement at 7 (violation of 18 U.S.C. § 924(c)(1)). While plaintiff-petitioners have clearly and unequivocally waived their right to challenge the factual bases underlying their convictions or sentences, they have not waived their right to challenge the BOP's legal basis (i.e. its interpretation of a federal statute) for determining their eligibility for early release under the RDAP, a determination made by the BOP that is separate and distinct from the sentence imposed by the district court. The heart of their challenge is this case is not their respective convictions for their substantive crimes or the sentences imposed by the district court but whether the BOP is correct in its interpretation that a "nonviolent offense" includes sentences such as theirs that were enhanced as a result of firearms. Thus, the Court finds that the Plaintiffs have not waived their right to challenge the BOP's legal interpretation. However, Plaintiffs' contention that the BOP must make particularized fact-finding in determining sentence reduction eligibility is foreclosed in any event by the Supreme Court's decision in *Lopez*, which rejected the "argument ... that the [BOP] must not make categorical exclusions, but may rely only on case-by-case assessments." *Lopez*, 531 U.S. at 243–44, 121 S.Ct. 714.

In a related argument, Petitioner Floyd contends that the BOP's current practice of reviewing the facts contained within the Presentence Report ("PSR") to determine a prisoner's eligibility (or lack thereof) for early release intrudes upon the discretion conferred to federal district court judges in determining sentences under the USSG and under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This contention lacks merit because the district court judge's sentencing recommendation under 18 U.S.C. § 3553(a) that the defendant participate in the RDAP is simply that: a recommendation to the BOP. The BOP retains the authority—and discretion—to determine the early release eligibility for participants in that program. Whether a prisoner is accorded early release credit does not change the sentence the district court judge imposed based upon the facts found or stipulated.

Second, Plaintiff Overman's reliance on the Supreme Court's recent decision in *District of Columbia v. Heller*, —— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), is weak at best because the firearm was in Overman's car, while the focus of the decision in *Heller* was on the inherent right of self-defense central to the Second Amendment in the context of defense of one's home. *Id.* at 2817–18.

Third, Plaintiffs' contention that their Due Process rights were violated fails because convicted prisoners lack a constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Robinson v. Gonzales*, 493 F.Supp.2d 758, 763 (D.Md.2007).

Fourth, Plaintiffs contend that their Equal Protection rights have been violated due to the fact that similarly situated federal prisoners (i.e. those who have received sentencing enhancements for firearms) who are incarcerated in the Ninth Circuit are eligible for early release while they are not; however, they have not alleged nor demonstrated a fundamental right or membership in a suspect class that would merit heightened scrutiny or demonstrated why the BOP's difference in treatment would not survive rational basis review.

## A. Judicial Review of the BOP's Early Release Eligibility Determination

■ The BOP contends that judicial review of the plaintiffs-petitioners' claims is precluded because the BOP's determination about the Plaintiffs' eligibility for early release is an adjudication, which the organic statute, 18 U.S.C. § 3625, specifically proscribes and displaces the application of the judicial review provisions of the APA.

Section 3625 provides that "[t]he provisions of ... 701 through 706 of title 5, United States Code, do not apply to the making of any *determination, decision, or order* under this subchapter," which means that judicial review is not available for any *adjudication* by the BOP. 18 U.S.C. § 3625 (emphasis added); *see also* 5 U.S.C. § 701(a) (judicial review provisions of the APA apply in situations in which judicial review is not precluded by statute). The BOP relies upon the inclusion of the words "judgment," "deemed," "appropriate," and "may" in § 3621 as support for its contention that it makes an adjudication—however informal—when it makes a decision regarding sentence reduction eligibility. 18 U.S.C. § 3621 (emphasis added) ("any inmate who in the *judgment of the BOP Director is deemed* to have successfully completed a program of substance abuse treatment shall remain in the custody of the BOP *under such conditions as the BOP shall deem appropriate* and the BOP *may* reduce a nonviolent offender's sentence"). Thus, if the BOP's categorical exclusion of a certain class of prisoners from early release eligibility were to qualify as an informal adjudication, the

Court would be precluded from judicial review of the Plaintiffs' claims.

The APA defines the term "rule" broadly to encompass "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). On the other hand, the APA defines an "adjudication" as an "agency process for the formulation of an order," which is the "whole or part of a final disposition ... of an agency in a matter other than rule making." *Id.* § 551(6)–(7). As such, "[a]djudication is best-suited to one class of agency actions— resolution of factual disputes between individuals or between an agency and an individual." Richard J. Pierce, Jr., Sidney A. Shapiro, and Paul R. Verkuil, § 6.4.1 *Administrative Law and Process* 285 (4th ed. 2004).

Quite simply, the BOP's categorical exclusion by rule of a class of prisoners is not the kind of retrospective particularized fact-finding for each prisoner that would render such an exclusion an adjudication, and thereby preclude this Court's judicial review of the Plaintiffs' claims.[13] Rather, the BOP's promulgation of its rules and program statements over the years demonstrate that the BOP's determinations of eligibility have always been of prospective application to exclude a broad class of prisoners with certain convictions. *See Martin,* 133 F.3d at 1079 ("Absent from § 3625 is an exclusion of the rulemaking provisions of the [APA] ... Accordingly, it is apparent that § 3625 precludes judicial

---

**13.** Three federal district courts have held that the BOP's determination of early release eligibility is an adjudication, of which judicial review is precluded under § 3625. *See Riopelle v. Eichenlaub,* No. 2:08–11754, 2008 WL 2949236, at *1–2 (E.D.Mich. July 29, 2008) (dismissing habeas petition for lack of juris- diction under § 3625 due to finding that the BOP's determination was an adjudication instead of rulemaking or other procedure for which judicial review was provided); *Davis v. Beeler,* 966 F.Supp. 483, 489 (E.D.Ky.1997); *Lyle v. Sivley,* 805 F.Supp. 755, 760 (D.Ariz. 1992).

review of agency adjudicative decisions but not of rulemaking decisions."). Therefore, this Court is not precluded from judicial review of Plaintiffs' challenge to the validity of the BOP's rulemaking.

## B. Validity of the BOP's 2000 Final Rule and Accompanying Program Statement 5162.04

Plaintiffs contend that the Ninth Circuit's reasoning in *Arrington* should control this issue of first impression in this Court. Because the Court finds that the decision in *Arrington* is misguided due to binding precedent from the Supreme Court and the Fourth Circuit, the Court declines to follow *Arrington* for the reasons detailed below.

### 1. The Applicability of "Notice and Comment" Procedures to the BOP's 2000 Final Rule and Program Statement 5162.04

■■■ Plaintiffs contend that the BOP violated the APA because the 2000 Final Rule and Program Statement 5162.04 did not comply with the requirements of "notice and comment." As a threshold matter, the Court must determine whether the BOP's 2000 Final Rule and Program Statement 5162.04 are even subject to the "notice and comment" procedures of the APA.

■■■ The APA's "notice and comment" requirements only apply to legislative (i.e. substantive) rules and do not apply to *"interpretative rules,* general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A) (emphasis added). An "interpretative rule" is one that is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

Because "Congress did not define 'nonviolent offense' nor did it specify which inmates convicted of nonviolent offense would be entitled to early release" under 18 U.S.C. § 3621(e), the 2000 Final Rule (i.e. 28 C.F.R. § 550.58) was necessary to fill the gap by defining that ambiguous term, which is the distinguishing characteristic of an interpretative rule. *Keller v. Bureau of Prisons,* No. PJM–06–1303, 2006 WL 4808626, at *3 (D.Md. Nov. 15, 2006). It is clear from the language of the 2000 Final Rule and Program Statement 5162.04 that the BOP was attempting to fill the statutory gap left open and ambiguous by Congress in § 3621(e). The 2000 Final Rule explained that because "Congress did not mandate that all eligible inmates must receive the early release incentive," "[t]he reduction in sentence is an incentive to be exercised at the discretion of the [BOP]" under § 3621 to narrow the class of prisoners eligible for early release by excluding those convicted of offenses involving the carrying, possession, or use of a firearm or other dangerous weapon or explosives. 65 Fed.Reg. 80745, 80747–48 (Dec. 22, 2000). The BOP further explained in the "summary of changes" section of the 2000 Final Rule that it had promulgated and adopted the 1997 Interim Rule and the 2000 Final Rule "[d]ue to varying interpretations of the regulations in the case law," and the need for a "uniform and consistent" national policy. *Id.*

This interpretation is supported by the Fourth Circuit's prior determination that the precursor 1995 Rule, upon which the 2000 Final Rule was based and which also sought to fill the same statutory gap, was an interpretative rule not subject to the requirements of "notice and comment." *See Pelissero,* 170 F.3d at 447 (holding that the earlier version of 28 C.F.R. § 550.58 was "undoubtedly an interpretative rule" because it interpreted the term "non-violent offense"); *see also* Attorney General's

Manual on the APA at 30 n. 3 (1947) (defining interpretative rules as "rules or statements . . . to advise the public of the agency's construction of the statutes and rules which it administers.").

Implicit in the Supreme Court's decision in *Lopez,* which examined the 1997 Interim Rule (which is identical to the 2000 Final Rule), is its recognition that the BOP promulgated an interpretative rule, not a substantive one. The Supreme Court explained that "[i]n this familiar situation, where Congress has enacted a law that does not answer 'the precise question at issue,' all we must do decide is whether the [BOP], the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" 531 U.S. at 242, 121 S.Ct. 714 (citations omitted). The Supreme Court's reasoning demonstrates its understanding of the distinction between a situation when an agency is given a less-than-clear rule to apply, which requires some inherent interpretation on the agency's part (the situation in *Lopez* and here) versus an agency that is given authority to establish wholesale its own rule; indeed, it is the difference between following directions (an interpretative rule) and drafting them (a legislative or substantive rule).

Reliance on *Arrington,* therefore, would not be appropriate because the Ninth Circuit failed to consider, much less discuss, whether the BOP's 2000 Final Rule was a legislative/substantive one that is subject to the rigors of notice and comment (as well as other requirements of informal rulemaking) rather than an interpretative rule. The Ninth Circuit simply neglected to consider the possibility that the BOP could have—and did—adopt an interpretative rule to fill the statutory gap left by Congress's ambiguity in § 3621, which does not create new rights or obligations and does not require the attendant rigors

of notice and comment rulemaking. Therefore, the BOP's 2000 Final Rule is best characterized as an interpretative rule that is not subject to the "notice and comment" requirements and, therefore, no violation of the APA occurred.

Moreover, Program Statement 5162.04 is an internal agency guideline, which is similarly exempted from the requirements of "notice and comment" because it is accurately characterized as both a general statement of policy as well as a rule of agency procedure or practice. *See* Attorney General's Manual on the APA at 30 n. 3 (defining "statements of policy" as "statements . . . to advise the public prospective of the manner in which the agency proposes to exercise a discretionary power.").

## 2. Whether the BOP's 2000 Final Rule and Program Statement 5162.04 Was Arbitrary and Capricious

■ Decisions in this District have repeatedly upheld the validity of the BOP's interpretation of what constitutes a "non-violent offense" and have held that it is a reasonable one entitled to deference from this Court. The Fourth Circuit has held that "Congress entrusted the decision whether to grant inmates early release under 18 U.S.C. § 3621(e)(2)(B) 'solely to the discretion and expertise of the BOP, with a cautious eye toward the public safety and welfare.'" *Pelissero v. Thompson,* 170 F.3d 442, 447 (4th Cir.1999) (quoting with approval *Pelissero v. Thompson,* 955 F.Supp. 634, 637 (N.D.W.Va.1997)). In *Pelissero,* the Fourth Circuit held that "[w]hile the [BOP's] definition of a crime of a violence may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3), it is, nevertheless, a permissible and reasonable interpretation of the

statute from which the [BOP] derived its authority." *Pelissero*, 170 F.3d at 447.

In the years since *Pelissero*, three decisions from this District have all found that the BOP's denial of sentence reductions under 28 C.F.R. § 550.58 and the Program Statements were appropriate exercises of the discretion conferred to the BOP and thus did not violate the APA. *See Robinson*, 493 F.Supp.2d at 763–64 (holding that Program Statement 5162 "is a permissible interpretation with the power to persuade"); *Keller*, 2006 WL 4808626, at *3 (holding that the BOP's promulgation of 28 C.F.R. § 550.58 or the related program statement and their application did not violate the Constitution or any statute); *Patterson v. Dewalt*, No. AMD–05–3075, 2006 WL 1520724, at *3 (D.Md. May 26, 2006) (same). The reasonableness of the BOP's adoption of 28 C.F.R. § 550.58 is also supported by the Supreme Court's holding that the BOP's adoption of the interim rule in 1997, which contains the identical wording as the 2000 Final Rule at issue in this case, was both "permissible" and "reasonable." *Lopez*, 531 U.S. at 233, 242, 121 S.Ct. 714. The BOP correctly applied 28 C.F.R. § 550.58 and Program Statement 5162.04 in Plaintiffs' cases because each of the offenses of which they were convicted or to which they pled guilty was a felony that "involved the carrying, possession, or use of a firearm."

■■■■■ Again, *Arrington* is distinguishable because it violates the very administrative precept that it purports to apply. Specifically, when an agency explains its rationale for a decision, its decision is not arbitrary and capricious because a court's review under the arbitrary and capricious standard of § 706(2)(A) of the APA is narrow and deferential. The Court must consider only whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment";

the Court "is not empowered to substitute its judgment for that of the agency." *See, e.g.* 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), but a Court may not "may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). It is well-settled that the Court is confined to examining the administrative record to determine whether the agency has articulated a rational basis for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

The BOP provided two rationales in *Arrington* for the promulgation of the 2000 Final Rule: the increased risk that offenders with firearms convictions might pose a risk to the public and the need for uniformity in the application of eligibility regulations. *Arrington*, 516 F.3d at 1116. The Ninth Circuit held that the risk to the public was a "post hoc rationalization" that was not contained within the administrative record thereby eliminating the justification for any deference to the agency's action. *Id.* As to the second justification (uniformity in application of eligibility regulations), the Ninth Circuit held that despite the fact it was contained in the administrative record, the BOP could have attained its goal of uniformity by the categorical inclusion—rather than exclusion— of all prisoners with nonviolent convictions involving firearms. *Id.* Though the Ninth Circuit explained that "either choice in all likelihood would have withstood judicial scrutiny," but because the BOP "offered

no explanation for why it exercised its discretion to select one rather than the other" that rendered its decision arbitrary and capricious. *Id.*

Closer examination of *Arrington* reveals the fatal flaw in the Ninth Circuit's reasoning. The BOP provided an explanation for why it exercised its discretion to categorically exclude rather than include an entire class of inmates: it was concerned about uniformity. *Id.* However, that was not an explanation that the Ninth Circuit was willing to accept and, as such, the Ninth Circuit substituted its judgment for that of the agency. The legislative history behind § 3621 explicitly notes that "[s]ubstance abuse treatment for prison inmates is a powerful tool for reducing recidivism, easing prison overcrowding, and ultimately preventing crime." H.R.Rep. No. 320, 103 Cong., 1st Sess., 1993 WL 537335, at *4 (1993). In amending § 3621(e)(2)(B), the House Report noted that the amendment "authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and *uniformly applied* by the [BOP]." *Id.* at *7. Moreover, the Supreme Court explicitly agreed with and deferred to the BOP's "reasonabl[e] conclu[sion] that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Lopez*, 531 U.S. at 244, 121 S.Ct. 714. Taken in context, the BOP's concern about uniformity in application is not arbitrary or capricious but rather is the consequence of its fidelity to Congress's mandate. The connection between firearms, drug offenses, and violence is fully supported by the language of the statute, *Lopez*, and just plain common sense. Accordingly, the BOP's explanation for its interpretative rule is neither arbitrary nor capricious, but rather was manifestly correct.

### CONCLUSION

Therefore, for the reasons stated, the Court finds that the BOP's 2000 Final Rule and accompanying Program Statement 5162.04 are valid exercises of the BOP's discretion under 18 U.S.C. § 3621, and therefore Plaintiffs' requests for habeas and injunctive relief will, by separate order, be denied.

### ORDER

Upon consideration of (1) Plaintiff Minotti's Motions for Temporary Restraining Order [Paper No. 25], for Preliminary Injunction [Paper No. 26], and for Injunctive Relief as Conceded [Paper No. 27]; (2) Plaintiff Overman's Motions for Temporary Restraining Order [Paper No. 2] and Preliminary Injunction [Paper No. 3]; (3) Petitioner Floyd's Petition for Writ of Habeas Corpus [Paper No. 1]; and (4) Petitioner Floyd's Motion for Emergency Injunctive Relief [Paper No. 7], Defendant's responses thereto, the arguments presented at the hearing on October 1, 2008, and for the reasons stated in the accompanying Memorandum Opinion, it is this 31 st day of October, 2008, by the United States District Court for the District of Maryland,

**ORDERED** that Plaintiff Minotti's Motions for Temporary Restraining Order [Paper No. 25], for Preliminary Injunction [Paper No. 26], and for Injunctive Relief as Conceded [Paper No. 27] are **DENIED;** and it is further

**ORDERED** that Plaintiff Overman's Motions for Temporary Restraining Order [Paper No. 2] and Preliminary Injunction [Paper No. 3] are **DENIED;** and it is further

**ORDERED** that Petitioner Floyd's Petition for Writ of Habeas Corpus [Paper No. 1] is **DENIED;** and it is further

**ORDERED** that Petitioner Floyd's Motion for Emergency Injunctive Relief [Paper No. 7] is **DENIED;** and it is further

**ORDERED** that Defendant's Motion to File Sur–Reply Brief [Paper No. 16] is **GRANTED;** and it is further

**ORDERED** that Defendant's Motion for Extension of Time to Respond to Plaintiff Minotti's Amended Supplemental Brief [Paper No. 17] is **DENIED AS MOOT,** the case then having been transferred from the United States District Court for the District of Columbia to the United States District Court for the District of Maryland; and it is further

**ORDERED** that the Court adjudges and declares that the BOP's Final Rule published at 65 Fed.Reg. 80745 (Dec. 22, 2000), which adopted 28 C.F.R. § 550.58 (1997) as final without change, and Program Statement 5162.04 are valid and lawful in all respects; and it is further

**ORDERED** that final judgment is entered in all cases in favor of all Defendants; and it is further

**ORDERED** that the Clerk of this Court is directed to **CLOSE** the above cases.